IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RAYMOND WINCHESTER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) C.A. No. 18-1458 (MN) |
| | ) |
| KOLAWOLE AKINBAYO, Warden, and | ) |
| ATTORNEY GENERAL OF THE STATE | ) |
| OF DELAWARE, | ) |
| | ) |
| Respondents. | ) |

**MEMORANDUM OPINION**

Raymond Winchester. *Pro se* Petitioner.

Carolyn Shelly Hake, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Respondents.

June 17, 2020
Wilmington, Delaware



**NOREIKA, U.S. District Judge:**

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Raymond Winchester ("Petitioner"). (D.I. 1). The State filed an Answer in opposition. (D.I. 103). For the reasons discussed below, the Court will deny the Petition.

**I.      BACKGROUND**

   **A.      Factual Background[1]**

At approximately 8:30 p.m. on May 20, 2017, Wilmington Police officers responded to the intersection of West Fifth and North Orange Streets in the City of Wilmington following a reported assault of a DART bus driver by a passenger, later identified as Petitioner. (D.I. 103 at 3). The bus driver told officers that Petitioner had been disorderly and verbally harassing other passengers since he had boarded the bus at the Wilmington Amtrak Station. (D.I. 103 at 3-4). The driver stated that Petitioner became highly aggressive after he told him to leave the other passengers alone and to sit down while the bus was moving. (D.I. 103 at 4). The driver explained that Petitioner then approached the front of the bus and began arguing with him. As the driver pulled over to let Petitioner off the bus at Fifth and Orange Streets, Petitioner came up behind the driver and "cold-cocked" him with a closed fist punch to his face and neck. Petitioner then told the driver, "I got a knife, don't make me stab you next." Petitioner also told the driver, "[t]he minute I make bail, I'm going to come and find you." (D.I. 103 at 4).

Passengers on the bus who witnessed the incident told police that Petitioner appeared drunk and that he had acted highly aggressive toward the driver and passengers after he entered the bus.

---

[1]   The facts were summarized by the State and, because Petitioner's charges resulted in a guilty plea, were taken from the probable cause affidavit to the arrest warrant, court filings, truth-in-sentencing form, and transcript of the plea and sentencing. (D.I. 103 at 3-4).

The bus was equipped with video and audio surveillance cameras, which captured the verbal exchange between Petitioner and the driver and Petitioner punching the driver. The driver, who had just returned to work from a neck surgery, suffered severe neck pain and PTSD and was transported to the Wilmington Hospital, where he was admitted and treated. (D.I. 103 at 4). Petitioner was arrested.

### B.   Procedural Background

In July 2017, Petitioner was indicted and charged with second degree assault, terroristic threatening, and disorderly conduct. (D.I. 103 at 1; D.I. 104-1 at 1). At his final case review on November 6, 2017, Petitioner rejected a plea offer to second degree assault, and his case was set for trial on November 16, 2017. (D.I. 103 at 1 n.2).

On November 16, 2017, Petitioner entered a *Robinson* plea[2] to second degree assault. (D.I. 103 at 1-2). In exchange, the State agreed to enter a *nolle prosequi* on the remaining charges, to refrain from pursuing habitual offender sentencing, and to recommend no more than six years of Level V incarceration. Petitioner agreed for his counsel to recommend no less than three years of Level V incarceration. (D.I. 103 at 2). On February 2, 2018, the Superior Court sentenced Petitioner to six years at Level V, suspended after three years for three years at Level IV, suspended, in turn, after six months at Level IV for eighteen months of Level III probation. (D.I. 103 at 2; D.I. 104-6 at 1). In 2018, Petitioner filed a notice of appeal, which the Delaware Supreme Court dismissed as untimely on September 4, 2018. *See Winchester v. State*, 194 A.3d 371 (Table), 2018 WL 4212138, at *1 (Del. Sept. 4, 2018).

---

[2]   A *Robinson* plea permits a court to accept a guilty plea in the absence of the defendant's admission of guilt. *See Robinson v. State*, 291 A.2d 279, 281 (Del. 1972). During Petitioner's plea colloquy, defense counsel explained that "[i]t's a *Robinson* plea because [Petitioner] doesn't recall the facts due to a high level of intoxication at the time and mental health issues. He understands it's a felony." (D.I. 104-4 at 1).

2

On April 17, 2018, Petitioner filed a *pro se* motion for modification of sentence, which the Superior Court denied on June 25, 2018. (D.I. 103 at 2; D.I. 104-8 at 1-7; D.I. 104-9 at 1-3). Petitioner did not appeal that decision.

On September 14, 2018, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") and a motion to appoint counsel. *See State v. Winchester*, 2018 WL 4847212 (Del. Super. Ct. Oct. 4, 2018). The Superior Court summarily dismissed the Rule 61 motion and denied the motion for appointment of counsel in October 2018. *See id*. at *2. Petitioner did not appeal that decision. (D.I. 103 at 2).

In October 2019, Petitioner filed a second *pro se* motion for modification of sentence. (D.I. 103 at 3). The Superior Court denied the second motion for modification of sentence. (D.I. 103 at 3). Petitioner did not appeal that decision.

## II.    GOVERNING LEGAL PRINCIPLES

### A.    The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to the AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

**B.     Exhaustion and Procedural Default**

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused, and the claims treated as "technically exhausted", if state procedural rules preclude him from seeking further relief in state courts. *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also*

*Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006).  Although treated as technically exhausted, such claims are procedurally defaulted for federal habeas purposes.  *See Coleman*, 501 U.S. at 749 (1991); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000).  Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims.  *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51.  To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[3] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001).  The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496.  A petitioner establishes actual innocence by asserting "new reliable evidence - - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no

---

[3] *Murray*, 477 U.S. at 496.

reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

### III.  DISCUSSION

Petitioner's timely filed habeas Petition asserts the following three grounds for relief: (1) defense counsel provided ineffective assistance (D.I. 1 at 5, 7); (2) the restitution he was ordered to pay was excessive because the driver/victim's (hereinafter referred to as "victim") injury was allegedly pre-existing (D.I. 1 at 8; D.I. 9 at 1); and (3) his sentence is illegal because he rejected the plea offer on November 6, 2017 (or on November 14, 2017) and was not convicted by a jury (D.I. 1-2 at 1-3; D.I. 9 at 1).

#### A.  Claim One: Ineffective Assistance

In Claim One, Petitioner contends that defense counsel provided ineffective assistance for three reasons: (a) counsel failed to provide Petitioner with medical records from the victim's hospital treatment following the assault which would have shown that the driver had a pre-existing injury; (b) counsel improperly allowed Petitioner to enter a *Robinson* plea to a plea offer that had been rejected earlier; and (c) after learning about the victim's pre-existing injury, counsel failed to secure a more appropriate plea offer, such as one for offensive touching or third degree assault. Petitioner raised all three arguments in his Rule 61 motion, which the Superior Court summarily dismissed after determining that Petitioner had misapprehended the facts and the law as it related to his plea. *See Winchester*, 2018 WL 4847212, at *2.

Petitioner did not appeal the Superior Court's decision. As a result, he has failed to exhaust state remedies for the ineffective assistance arguments in Claim One. At this juncture, any attempt by Petitioner to raise Claim One in a new Rule 61 motion would be barred as untimely under

6

Delaware Superior Court Criminal Rule 61(i)(1)[4] and barred as second or successive under Rule 61(i)(2).[5] Consequently, the Court must treat Claim One as technically exhausted but procedurally defaulted, which means that the Court cannot review the merits of the Claim absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review.

Petitioner does not assert any reason for his default of Claim One.[6] To the extent the Court should consider whether the absence of appointed counsel for Petitioner's Rule 61 motion provides cause for the default under *Martinez v. Ryan,* 566 U.S. 1 (2012), the Court finds that it does not. In *Martinez*, the Supreme Court held for the first time that inadequate assistance or absence of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of defense counsel. *Id*. at 16-17. In order for a procedural default to be excused under *Martinez*,[7] however, a petitioner must demonstrate that: (1) the procedural default was caused by either the lack of counsel or post-conviction counsel's ineffective assistance; (2) the lack or ineffectiveness of counsel occurred in the first

---

[4] *See* Del. Super. Ct. Crim. R. 61(i)(1) (establishing a one-year deadline for filing Rule 61 motions).

[5] *See* Del. Super. Ct. Crim. R. 61(i)(2) (providing that second or successive motions shall be summarily dismissed unless they meet the pleading requirements of Rule 61(d)(2)(i) or (ii)).

[6] Petitioner did not file a Reply to the State's Answer responding to the State's procedural default argument. Although he filed numerous letters regarding the instant proceeding, those letters essentially reassert the issues he raised in his Petition and assert his dissatisfaction with the failure to obtain a faster disposition of the instant habeas proceeding. To the extent the Court should view Petitioner's letters comparing his copies of state court documents with the copies in the record filed by the State – and his notations on those copies – as a Reply to the State's Answer, the letters and notations do not provide an explanation for Petitioner's default but, again, appear to provide additional support for his original arguments. (D.I. 106; D.I. 107; D.I. 108; D.I. 109; D.I. 110).

[7] Finding cause under *Martinez* "does not entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted." *Martinez*, 566 U.S. at 17.

collateral proceeding in which the claim could have been heard; and (3) the underlying ineffective assistance of defense counsel claim is substantial (*i.e.*, has "some merit"). *See Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014). Significantly, the *Martinez* Court explicitly limited its rule, stating that the "holding in this case does not concern errors in other kinds of proceedings, **including appeals from initial-review collateral proceedings**." *Id.* at 16 (emphasis added). The Supreme Court explained that, "[w]hile counsel's errors in these [other kinds of] proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding." *Id*. at 11.

In this case, although the Superior Court did not appoint counsel to represent Petitioner in his Rule 61 proceeding, Petitioner presented Claim One's ineffective assistance allegations in his "initial-review collateral proceeding" by including them in his Rule 61 motion. The instant default occurred because the allegations were not then presented to the Delaware Supreme Court on appeal from that proceeding. Therefore, *Martinez*'s limited exception to the default rule is inapplicable and cannot provide a vehicle for establishing cause.

In the absence of cause, the Court does not need to address the issue of prejudice. Nevertheless, Petitioner cannot demonstrate that he was prejudiced by the default of Claim One, because his ineffective assistance arguments are premised on a misapprehension of facts and law regarding the victim's injury. After punching the victim in the face with a closed fist, Petitioner was charged with second degree assault pursuant to 11 Del. C. § 612(a)(3) for causing a physical injury to a public transit operator acting in the lawful performance of his duty. The term "physical injury" is defined as "impairment of physical condition or substantial pain." 1 Del. C. § 222(23). The injury Petitioner was charged with causing under § 612(a)(3) was the victim's "internal neck injury"; he was not charged with causing a brain tumor. (D.I. 104-2). Consequently, the victim's

8

pre-existing brain tumor was irrelevant to the assault charge, because Petitioner would have been charged with second degree assault even if the victim did not have a tumor. In addition, because the injury at issue was the severe neck pain that resulted from Petitioner's punch, defense counsel could not have used the discovery of the victim's pre-existing tumor to secure a plea agreement to offensive touching or third degree assault. Given these circumstances, Petitioner cannot demonstrate that he suffered prejudice from defense counsel's failure to use the existence of the victim's pre-existing tumor to his advantage.

Petitioner also appears to misapprehend the facts and law as they relate to his plea agreement. The record demonstrates that Petitioner rejected a plea offer to second degree assault during his final case review on November 6, 2017, but then entered a *Robinson* plea on November 16, 2017 to second degree assault. In the first plea offer dated November 6, 2017, the State agreed to recommend no more than five years at Level V, whereas in the plea offer dated November 16, 2017, the State agreed to recommend no more than six years at Level V. (D.I. 103 at 15-16 n.70)

Unfortunately, when the Superior Court denied Petitioner's Rule 61 motion, it mistakenly identified the date on which Petitioner rejected the first plea offer as November 14, 2017, rather than November 6, 2017. *See Winchester*, 2018 WL 4847212, at \*1. Petitioner appears to assert three different arguments based upon the Superior Court's misstatement. First, he contends that he entered the plea agreement on November 6, 2017 "thinking that [he] had caused the injury to the victim," but the November 6, 2017 plea "was rejected and not entered." (D.I. 1 at 7). He asserts that, on November 14, 2017, trial "counsel signed the same plea agreement [from November 6, 2017] without even informing [Petitioner] that it had been rejected and also [without informing Petitioner] that the victim's injury stemmed from a pre-existing tumor." (D.I. 1 at 7). In another variation of the same argument, Petitioner asserts that he signed the plea on

9

November 6, 2017, then rejected the plea on November 14, 2017, which was "later [] re-entered on November 16, 2017 without [Petitioner] re-signing or [being made] aware of the prior mishaps." (D.I. 1 at 7). Finally, in at least two letters to the Court, Petitioner appears to assert that the Superior Court judge rejected the original November 6, 2017 plea agreement on November 14, 2017 without Petitioner's knowledge, and he contends that the State committed "forgery" with respect to the plea agreement dated November 16, 2017. (D.I. 106 at 2; D.I. 107 at 5).

The consistent underlying theme in the aforementioned three arguments is Petitioner's belief that the guilty plea entered on November 16, 2017 was somehow rendered void by the circumstances surrounding his rejection of the first plea offer. This argument does not demonstrate prejudice to overcome his default of Claim One. As an initial matter, because plea agreements are analyzed under standards of contract law,[8] Petitioner's rejection of the November 6, 2017 plea offer terminated his right to accept or his right to insist upon the performance of the particular terms contained in the November 6, 2017 plea offer. *See* 1 Williston on Contracts § 5.3 (4th ed.) ("When an offer has been rejected, it ceases to exist."). Moreover, the fact that Petitioner rejected the November 6, 2017 plea offer did not taint or render involuntary the plea offer he accepted on November 16, 2017. Rather, Petitioner's eventual acceptance of the November 16, 2017 plea offer suggests that Petitioner thought over and recognized the benefit of accepting the plea offer on November 16, 2017, perhaps because the plea offer was a "take it or leave it" deal and he faced a possible life sentence if convicted at trial as a result of his eligibility for habitual sentencing. (D.I. 103 at 6; D.I. 104-7 at 5).

---

[8] *See, e.g., United States v. Williams*, 510 F.3d 416, 422 (3d Cir.2007).

In turn, the record establishes that Petitioner knowingly, voluntarily, and intelligently entered a plea agreement on November 16, 2017. It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" that creates a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Here, the transcript of Petitioner's November 16, 2017 plea colloquy contains his clear and explicit statements that he discussed his case with defense counsel and that he was satisfied with his counsel's representation. (D.I. 104-4 at 2-4). Petitioner also indicated that nobody forced him to enter a plea or promised anything that was not stated in the plea agreement. (D.I. 104-4 at 3). He affirmatively answered that he understood the plea constituted a waiver of all of his trial rights; that he understood the charges and evidence against him; that he had no questions about the plea form; and that he had filled it out honestly. *Id*. at 3-4. In turn, the Truth-In-Sentencing Guilty Plea Form signed by Petitioner indicates that he knowingly and voluntarily entered into his plea agreement; he was not promised anything not contained in the plea agreement; he was not forced or threatened to enter the plea agreement; and he knew he faced a possible maximum sentence of eight years. (D.I. 104-5 at 2). Given these circumstances, Petitioners vague suggestion that his rejection of the first plea offer somehow rendered the November 16, 2017 plea agreement involuntary and illegal fails to provide compelling evidence as to why the statements he made during the November 16, 2017 plea colloquy should not be presumptively accepted as true.

A defendant who "solemnly admitted in open court that he is in fact guilty of the offense with which he is charged . . . may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Consequently, by entering a voluntary and knowing guilty plea, Petitioner has waived claims of ineffective assistance of counsel involving counsel's performance

11

prior to the entry of the guilty plea that do not challenge the voluntariness of his plea,[9] as well as "all nonjurisdictional issues"[10] that occurred prior to the entry of the plea. *Washington v. Sobina*, 475 F.3d 162, 165 (3d Cir. 2007). In short, Petitioner has failed to establish the prejudice necessary to overcome his procedural default of Claim One.

Finally, the miscarriage of justice exception to the procedural default doctrine does not excuse Petitioner's default because Petitioner has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claim One as procedurally barred from habeas review.

### B. Claim Two: Not Cognizable

In Claim Two, Petitioner contends that the restitution ($4,310.23 to Christiana Care for the victim's medical treatment) ordered by the Superior Court[11] was excessive because the victim's injury was pre-existing. A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Third Circuit has held that "the monetary component of a sentence is not capable of satisfying the 'in custody' requirement of federal habeas statutes." *United States v. Ross*, 801 F.3d 374, 380 (3d Cir. 2015) (collecting cases); *see also Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003) (noting that "[t]he payment of restitution or a fine, absent

---

9  *See United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir.2000); *cf. United States v. Porter*, 405 F.3d 1136, 1141 (10th Cir.2005) (entry of plea did not waive claim of ineffective assistance asserting petitioner's dissatisfaction with counsel's post-plea performance).

10  As explained by the Court of Appeals for the Tenth Circuit, the term "non-jurisdictional" is somewhat confusing; rather, "[t]he most accurate statement of the law would be . . . [that a] guilty plea waives all defenses except those that go to the court's subject-matter jurisdiction and the narrow class of constitutional claims involving the right not to be haled into court." *United States v. DeVaughn*, 694 F.3d 1141, 1193 (10th Cir. 2012).

11  (D.I. 104-8 at 4; D.I. 104-10 at 5).

more, is not the sort of 'significant restraint on liberty' contemplated in the 'custody' requirement of the federal habeas corpus states."). The Third Circuit has also opined that its role on habeas review does not include reviewing the alleged excessiveness of a restitution fine because it does not challenge confinement. *See Stoltzfoos v. Sec'y Penn. Dep't Corrs.*, 733 F. App'x 34, 37 n.6 (3d Cir. 2018). Based on the foregoing, the Court will deny Claim Two for failing to assert an issue cognizable on federal habeas review.

### C. Claim Three: Illegal Sentence

In his final Claim, Petitioner asserts two somewhat contradictory arguments as to why he believes his six year sentence is illegal. First, he contends that his six year sentence is illegal because he rejected the plea offer and was not convicted by a jury. Consequently, "nothing should be holding [him] in prison[, because] there [are] no other charges, probation violation, [or] outstanding fines." (D.I. 7 at 5). Petitioner, however, also contends that he did not reject the first plea offer on November 6, 2017, thereby rendering illegal the six year sentence that was imposed pursuant to the plea offer he accepted on November 16, 2017. (D.I. 1-2 at 1-3; D.I. 14 at 1-2; D.I. 28 at 1). To support this second argument, Petitioner points to the Superior Court's decision denying his Rule 61 motion, which asserts that Petitioner rejected the first plea offer on November 14, 2017 rather than on November 6, 2017. According to Petitioner, this reference demonstrates that the rejection of the first plea was forged, because he was not in court on November 14, 2017.

Petitioner did not exhaust state remedies for either argument asserted in Claim Three because he did not appeal the Superior Court's denial of his two motions for modification of sentence or his Rule 61 motion.[12] Nevertheless, the Court will exercise its discretion and proceed

---

[12] The state court record contains copies of Petitioner's first motion for modification of sentence and his Rule 61 motion, which do not contain the arguments asserted in Claim

to the merits of Claim Three.[13] *See* 28 U.S.C. 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")

To the extent Petitioner contends that some type of forgery occurred with respect to the first rejected plea, the Court is not persuaded. To support his contention of forgery, Petitioner has provided a copy of the November 6, 2017 plea offer with a handwritten notation stating "11/14/17 not entered" and Petitioner's signature crossed out with the handwritten date "11/14/17" next to it. (D.I. 1-1 at 9; D.I. 107 at 3). The copy provided by Petitioner has other numerous handwritten notations on it, most (if not all) of which appear to have been made by Petitioner himself. (D.I. 1-1 at 9; 107 at 3; D.I. 109 at 5). In contrast, the official record provided by the State contains a plea offer that was rejected and signed on November 6, 2017, a plea agreement that was accepted and

---

Three. (D.I. 104-8 at 2-3; D.I. 104-10 at 1-6). Because the state court record does not contain a copy of Petitioner's second motion for modification of sentence, the Court cannot verify whether that motion contained the arguments in Claim Three. Regardless, Claim Three is unexhausted because Petitioner did not appeal the Superior Court's denial of the two motions for modification of sentence and the Rule 61 motion to the Delaware Supreme Court.

[13] "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *Rhines v. Weber*, 544 U.S. 269, 277 (2005) (quoting 28 U.S.C. § 2254(b)(2)). As explained by Justice Alito:

> In the absence of any legal obligation to consider a preliminary nonmerits issue, a court may choose in some circumstances to bypass the preliminary issue and rest its decision on the merits. *See, e.g.*, 28 U.S.C. § 2254(b)(2) (federal habeas court may reject claim on merits without reaching question of exhaustion). Among other things, the court may believe that the merits question is easier, and the court may think that the parties and the public are more likely to be satisfied that justice has been done if the decision is based on the merits instead of what may be viewed as a legal technicality.

*Smith v. Texas*, 550 U. S. 297, 324 (2007) (Justice Alito, with Chief Justice Roberts and Justices Scalia and Thomas, dissenting).

14

signed November 16, 2017, a Truth-in-Sentencing Form that was signed on November 16, 2017, and a transcript of the plea colloquy that took place on November 16, 2017. (D.I. 104-3 at 1; D.I. 104-4 at 1-5; D.I. 104-5 at 1-2). None of the documents in the official state court record have the notations that appear on Petitioner's copies and, more importantly, none of the copies of the plea offers in the state court record contain a handwritten notation stating "11/14/2017" or has Petitioner's signature crossed out with the handwritten date "11/14/17" next to it. In addition, and as conceded by Petitioner, the Superior Court docket does not contain any entry for November 14, 2017. Given these circumstances, the Court rejects as factually baseless Petitioner's contention that his rejection of the first plea offer was forged on November 14, 2017. In addition, to the extent Petitioner alleges that his acceptance of the plea agreement on November 16, 2017 was forged, this contention is belied by the transcript of Petitioner's November 16, 2017 plea colloquy. (D.I. 104-4 at 1-5; *see also supra* at Section III.A).

Second, to the extent Petitioner argues that any defects related to his first plea offer render illegal the sentence imposed under the November 16, 2017 plea agreement, the argument fails. As already discussed, Petitioner's voluntary and knowing plea entered on November 16, 2017 waived any defects that may have occurred prior to November 16, 2017. *See supra* at Section III.A. Moreover, and contrary to his assertion, Petitioner did sign the bottom of the plea form on November 6, 2017, re-affirming the statement contained therein that he had reviewed the plea offer with defense counsel and chose not to accept the offer. (D.I. 28-1 at 6; D.I. 104-3 at 1). The Court reiterates that, because plea agreements are analyzed under contract law standards, Petitioner's rejection of the November 6, 2017 plea offer terminated his right to accept or insist upon the performance of the particular terms contained in the November 6, 2017 plea offer. *See supra* at Section III.A. As a result, the rejected November 6, 2017 plea had no effect on the voluntary and

15

knowing plea Petitioner accepted on November 16, 2017, and Petitioner did not have a right to require the State to re-offer the terms of the November 6, 2017 plea that he rejected.

Having discounted Petitioner's argument that some type of forgery occurred with respect to his rejection of the first plea offer which somehow rendered invalid his acceptance of the November 16, 2017 plea offer, the Court also notes that Petitioner cannot demonstrate that the sentence imposed pursuant to the November 16, 2017 plea agreement is illegal for some other unidentified reason. In Delaware, second degree assault is a Class D felony subject to a maximum eight year sentence at Level V incarceration. *See* 11 Del. C. § 612 (defining second degree assault as a Class D felon); 11 Del. C. § 4205(b)(4) (establishing eight years of Level V incarceration as the maximum punishment for a Class D felony). As Petitioner acknowledged during his plea colloquy, the Superior Court had discretion to sentence Petitioner from zero to eight years of incarceration as a result of his plea, regardless of any recommendations contained in the plea agreement. (D.I. 104-4 at 3-4; *see also* 11 Del. C. § 4205(b)(4) (explicitly stating that the term of incarceration for a Class D Felony may be "up to 8 years to be served at Level V."). Here, the Superior Court sentenced Petitioner to six years at Level V, suspended after three years for three years at Level IV. Additionally, Petitioner received thirty-one days credit for the time he spent in prison after his arrest. Because Petitioner's six year sentence did not exceed the eight year statutory maximum sentence and also conformed to the terms of the November 16, 2017 plea agreement, Petitioner has failed to demonstrate why his sentence is illegal. Accordingly, the Court will deny Claim Three as meritless.

### IV. <u>CERTIFICATE OF APPEALABILITY</u>

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a

constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The Court has concluded that the instant Petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the Court will not issue a certificate of appealability.

## V.     **CONCLUSION**

For the reasons stated, the instant Petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate Order shall issue.